**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ELISA NILI CIRILO PERES BEN-RAFAEL,**
*et al.,*

                        **Plaintiffs,**

        **v.**

**ISLAMIC REPUBLIC OF IRAN,** *et al.,*

                        **Defendants.**

                                           **Case No. 08-00716 (ESH)**

**PLAINTIFFS' PROPOSED FINDINGS
OF FACT AND CONCLUSIONS OF LAW**

## I.      HISTORICAL AND PROCEDURAL BACKGROUND

        This action is brought under the grant of subject matter jurisdiction contained in 28

U.S.C. §1605A.  It was filed on the heels of this Court's entry of default judgment entered

by his Court on February 25, 2008 in a related action brought by the same plaintiffs against

the Islamic Republic of Iran ("Iran") and its Ministry of Information and Security ("MOIS")

under the jurisdictional grant contained in the former 28 U.S.C. §1605(a)(7).  The prior

underlying action shall be referred to hereafter as the "Underlying Action."  On February

25, 2008, this Court entered both (i) a Default Judgment against Iran and MOIS in a sum

certain on behalf of each of the Plaintiffs[1] and (ii) a Memorandum Opinion ("Opinion").

The Opinion is reported in *Ben-Rafael v. Islamic Republic of* Iran, 540 F.Supp.2d 39

(D.D.C. 2008).  The Opinion is incorporated herein by reference.

        In the instant action, Plaintiffs seek two forms of relief:  (i) to have the Default

Judgment entered in the Underlying Action confirmed, declared, and entered as a judgment

---

[1] There exists an absolute identity of Plaintiffs as between the Underlying Action and the instant
action.

pursuant to the jurisdictional grant in 28 U.S.C. §1605A, and (ii) to adjudge each of the

other Defendants who are named in the instant action and who were not Defendants in the

Underlying Action ("Unserved Defendants") as an "agency or instrumentality" of Iran for

purposes of 28 U.S.C. §1610(g), so as to enable the Default Judgment to be executed against

assets of the Unserved Defendants.[2]

Defendants Iran and Islamic Revolutionary Guard Corps ("IRGC") are the only

Defendants who were duly served with service of process issued in the instant action.  With

the exception of the IRGC, the Unserved Defendants remain unserved to date.  As a result of

this state of service of process, Plaintiffs have moved in this action for the entry of a final

judgment by default against Defendants Iran and IRGC to be certified pursuant to the

criteria of Rule 54(b), Fed. R. Civ. P.

Service on Iran and IRGC was effected on September 8, 2009.  The time for these

Defendants to file a responsive pleading expired on November 7, 2009.  No responsive

pleading or appearance was filed on behalf of Defendants with this Court.  Accordingly, on

February 22, 2010, Plaintiffs moved for entry of default against Iran and IRGC pursuant to

Rule 55(a), Fed. R. Civ. P.  Default was entered by the Clerk of the Court on February 23,

2010 as to both of these Defendants.

Plaintiffs have also moved for the entry of judgment by default under Rule 55(b)

("Default Judgment Motion").  That motion is now pending before this Court.

---

[2] The Unserved Defendants are National Iranian Oil Company; Bank Saderat, Iran; Bank Melli, Iran; Bank Sepah, Iran; Ministry of Defense and Support of the Islamic Republic of Iran.

The role of the IRGC[3] has been well documented and described in opinions of this Court.  It was created in 1979 during the Iranian Revolution and originally tasked to protect and spread the goals of that fundamentalist revolution.  As described in *Rimkus v. Islamic Republic of Iran,* 575 F.Supp.2d 181 (D.D.C. 2008):

> Defendant IRGC is a non-traditional instrumentality of Iran.  It is the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.  It is similar to the Nazi party's SA organization prior to World War II.  The IRGC actively supports terrorism as a means of protecting the Islamic revolution that brought the Ayatollah to power in Iran in 1979.  It has its own separate funding sources, derived in part from its confiscation of the assets of the former Shah of Iran in 1979, when the Shah was deposed.  *Heiser,* 466 F.Supp.2d at 251-52, ¶6; *Blais,* 459 F.Supp.2d at 47, ¶11.

*Id.* at 187.

In *Holland v. Islamic Republic of Iran,* 496 F.Supp.2d 1 (D.D.C. 2005), which involved the 1983 bombing of the U.S. Marine barracks in Lebanon and the murder of 241 American servicemen, the court described how the IRGC was used to export the goals of the 1979 revolution and radicalize terrorist organizations in other countries.  The Iranian government and the IRGC provided financial support and training for the terrorists.  The IRGC was found to be the primary mover behind the attack by recruiting the individuals involved, training the suicide bombers, preparing the explosives, and installing the explosives in the truck driven into the barracks.  *Id.* at 9-10.

The U.S. government designated the IRGC as a "specially designated global terrorist" under Executive Order 13224 in 2001.  On June 29, 2005, the IRGC was further designated in Executive Order 13882 as a supporter of proliferation activities and for its support of terrorism.

---

[3] The IRGC is also referred to as the Pasdaran."  The findings of fact as to the Defendant Iran are adopted expressly from the Opinion and are incorporated herein by reference.  Accordingly, there exists no need to repeat these findings here.

E.O. 13882 identified nine IRGC-affiliated entities and five IRGC-affiliated individuals.  On

February 10, 2010, also under E.O. 13882, the U.S. Department of the Treasury identified an

additional individual, and four additional IRGC-affiliated companies as proliferators of weapons

of mass destruction and supporters of terrorism.

## CONCLUSIONS OF LAW

**I.**    **JURISDICTION UNDER THE FSIA**

The FSIA's grant of jurisdiction and the "interlocking provisions" of that statute

involving both subject matter jurisdiction and authorization to serve a "foreign state" or an

"agency or instrumentality" thereof with service of process, preserved by the FSIA were

discussed in the Opinion.  *See, id.,* p. 7.  After the filing of the Underlying Action but shortly

before the entry of the Default Judgment and Opinion, the grant of subject matter jurisdiction

contained in the former §1605(a)(7) of FSIA was superceded by the current grant of jurisdiction

under §1605A.  Section 1605A did not affect any change in the authorization or prescribed

method for serving either the "foreign state" or any "agency or instrumentality" thereof under

§1608, once "the state loses its immunity pursuant to §1605(a)(7)" and now obviously under

§1605A.  *Price v. Socialist People's Lybean Arab Jamahimya,* 294 F.3d 82, 89 (D.C. Cir. 2002).

The uncontested facts presented here demonstrate that there exists jurisdiction against

Defendants Iran and IRGC under the FSIA.

A.    Service of Process

The three methods for service upon Iran or any political subdivision thereof are described

in detail in Opinion, at pages 17-18.  As in the Underlying Action, the so called "first three

methods were not possible here."  *Id.* at 18.  As in the Underlying Action, service by mail in

accordance with 28 U.S.C. §1608(a)(3) was attempted on October 31, 2008.  More than 30 days

elapsed since this manner of service was attempted pursuant to 28 U.S.C. 1608(a)(3), which is

the length of time which a plaintiff must wait before attempting service under §1608(a)(4), and the packages have yet to be returned.

On March 18, 2009, Plaintiffs initiated the first step for service under §1608(a)(4) by sending packages for service on Defendants Iran and IRGC with two copies of the pleadings, including Farsi translations, through diplomatic channels.  On September 8, 2009, the documents were transmitted to the Iranian Ministry of Foreign Affairs.  The Iranian Ministry of Foreign Affairs returned the documents without comment to the Swiss Foreign Ministry.  This service was proper §1608(a)(4) service "despite the return of the documents."  Opinion, p. 19, *citing, Sisso v. Islamic Republic of Iran,* 448 F.Supp.2d 76, 83 (D.D.C. 2006)("*Sisso I*").

    B.    <u>The §1650 Terrorism Exception to Sovereign Immunity</u>

With certain exceptions which are not applicable to the instant action, the jurisdictional grant occasioned by the waiver of a "foreign state" sovereign immunity when it is designated as a "state sponsor of terrorism" in §1605A is coterminous with the waiver of sovereign immunity under the superceded §1605(a)(7).  Moreover, the language of §1605(A)(3) authorizes the Court to entertain "related actions to timely commenced prior actions under §1605(a)(7).  Accordingly, "any other actions arising out of the same act or incident [as the prior timely filed §1605(a)(7) action] may be brought under section 1605A of Title 28, United States Code, if the action is commenced not later than the later of 60 days after –

        (A) the date of the entry of judgment on the original action; or

        (B) the date of enactment of this Act.

28 U.S.C. §1605A Note (c)(3).

The instant action was filed timely because (i) the latter of the two material dates above mentioned dates is February 25, 2008 when the Court entered the Default Judgment on the Underlying Action; (ii) the instant action was commenced on the 16th day after

February 25, 2008; and (iii) the instant action arises "out of the same act or incident" as the

Underlying Action which was unquestionably timely commenced under the former

§1605(a)(7).  Therefore, this Court has §1605a subject matter jurisdiction to entertain the

instant action and to confirm and enter the Default Judgment as a §1605A judgment.  There

is no legal reason for the Court to insist that the Plaintiffs relitigate here the claims which

underlie the Default Judgment, as explained in the Opinion.  This Court may take judicial

notice of the facts found and the Opinion.  *See, e.g., Rimkus,* at 186 n.3; *Heiser v. Islamic*

*Republic of Iran,* 466 F.Supp.2d 229, 262-63 (D.D.C. 2006).

Accordingly, the Court will confirm and enter the Default Judgment as a judgment

entered pursuant to this Court's §1605A "related actions" jurisdictional authority.

## II.     THE DECLARATORY RELIEF AGAINST IRGC

The National Defense Authorization Act for Fiscal Year 2008 which became law on

January 20, 2008, amended the FSIA in several ways, in addition to the §1605A superseding

grant of authority.

One of the new FSIA features introduced by the NDAA involves the attachment and

execution remedy available to judgment creditors whose judgments were obtained pursuant

to §1605A.  This particular amendment is codified at 28 U.S.C. §1610(g).  It provides as

follows:

> Subject to paragraph (3), the property of a foreign state against
> which a judgment is entered under section 1605A, and the
> property of an agency or instrumentality of such a state
> including property that is a separate judicial entity or is and
> interest held directly or indirectly is a separate "judicial entity,
> is subject to attachment in aid of execution, upon that judgment
> as provided in this section, regardless of –
>
> (A) the level of economic control over the property by the
> government of the foreign state;

    (B) whether the profits of the property go to that government;

    (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;

    (D) whether that government is the sole beneficiary in interest of the property; or

    (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

The Court concludes that IRGC is an agency or instrumentality of Iran.  *See, Bayani v. Islamic Republic of Iran*, 530 F.Supp.2d 40, 46 (D.D.C. 2007)(Kennedy, J.).  IRGC satisfies the definition and criteria of an "agency or instrumentality as set forth in 28 U.S.C. §1603(b) which requires that to qualify as such an entity must (1) be "a separate legal person, corporate or otherwise; (2) must in this instance be "an organ of a foreign state or political subdivision thereof"; (3) must be "neither a citizen of a state of the United States as defined in section 1332(a); and (d) of this title, nor created under the laws of any third country."  *Id.*

The Court has found that IRGC is a commercial organ of Defendant Iran, which was created by Iran and is plainly not a citizen of any state of the United States or a third country.  As to whether IRGC is a separate legal person, Judge Kennedy has so held in *Bayani* and this Court is persuaded to follow his rationale and holding to this effect.  Moreover, by default, Defendant IRGC has effectively admitted the Plaintiffs' specific allegations in the Amended Complaint that it "operates commercial activities."  *Id.,* ¶21).

There are other judges in this District who have held to the contrary.  *See, e.g., Rimkus,* at 199 (Lamberth, J.); *Holland,* at 32-33 (Kollar-Kotelly, J.); *Salazar v. Islamic Republic of Iran,* 370 F.Supp.2d 105, 116 (D.D.C. 2005).  Those decisions are no longer good law as they were rendered before the NDAA took effect and thus did not take into account §1610(g).

For all of these reasons, IRGC is declared to be an "agency or instrumentality" of Iran for §1610(g) purposes and its property and its interests in property are expressly subject to attachment in and of execution and execution on the §1605A judgment entered in a separate order of the Court in this action.

## III.   CERTIFICATION OF FINAL JUDGMENT UNDER RULE 54(B)

The Default Judgment Motion specifically requests that the Court invoke its Rule 54(b) power to certify the §1605A monetary judgment against Iran and the declaratory judgment against IRGC, respectively, as a final judgment, notwithstanding the claims pending against the Unserved Defendants.  "Rule 54(b) states that in a multi-party action, the court may "direct entry of a final judgment as to one or more, but fewer than all of the parties."  10 Moore Fed. Prac. §54.22[2][c] at 54-55.  In terms of its practical application, this Rule 54(b) language has been interpreted as follows:

> This language has been interpreted to require final adjudication of all of the rights and liabilities of at least one party before judgment may be directed as to that party; *i.e.,* the complete interest of the party must be finally adjudicated.  Perhaps the most common application of the rule to multi-party actions is the dismissal, summary judgment, or other adjudication of all of the claims asserted against one or more of multiple defendants.

*Id., citing In re Southeast Banking Corp.,* 69 F.3d 1539, 1550 (11th Cir. 1995)*; see also Maldonado-Dennis v. Castillo Rodriguez,* 23 F.3d 576, 579 (1st Cir. 1994); *FDIC v. Tripati,* 769 F.2d 507, 508 (8th Cir. 1985).

A rule 54(b) judgment "as to one of the multiple parties must dispose of the entire interests of that party."  10 Moore §54.22[2][c] at 54-56.  Measured against these standards, the Court determines that as to the Plaintiffs' claims against Defendant Iran that all of those claims are fully adjudicated insofar as all Plaintiffs have requested as to Defendant Iran is the entry of money judgment in favor of each Plaintiff against Iran under §1605A.  There is nothing further

to adjudicate against Defendant Iran.  The same holds true with respect to Plaintiffs' claims for declaratory relief against Defendant IRGC.  The full measure of the declaratory relief requested against IRGC has been granted here and there is nothing further for this Court to adjudicate against IRGC.  Therefore, as against both Iran and IRGC, there has been an absolutely complete adjudication of Plaintiffs respective claims against them.  The threshold requirement for involving the application of Rule 54(b) has therefore been satisfied.[4]

Lastly, this Court has to determine whether to exercise its discretion to grant Rule 54(b) relief.  by its own terms, the rule requires that the Court may enter judgment under it only if it "expressly determines that there is no just reason for delay.  Rule 54(h); *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7-13 (1980).  This discretionary determination "must take into account judicial administrative interests as well as the countries involved." *Id.* at 8; *see also Building Indus. Ass'n v. Dahhuff,* 1161 F.3d 740, 744-745 (D.C. Cir. 1998).

Based on the Court's application of the *Curtiss-Wright* test, it hereby determines that there exists "no just reason for delay" of the entry of Rule 54(b) final judgment for the following reasons:

1.      The equities weigh overwhelmingly in favor of Plaintiffs who have suffered grievous loss, as long ago as 1992.  Plaintiffs face very daunting challenges and obstacles in their ability to enforce the money judgment awards in their favor both in the United States and abroad. The interests of justice clearly would not be served by prolonging the Plaintiffs' ordeal and thus delaying their ability to avail themselves of the benefit of the §1605A judgment against Iran and

---

[4] There exists authority for the provision that where as here the unadjudicated remaining claims involve only unserved defendants.  An order finally disposing of the interests of these parties that have actively participated in the litigation as final despite the absence of a Rule 54(b) certificate."  10 Moore's at 54-57; *citing Cambridge Holdings Group, Inc. v. Federal Ins. Co.,* 489 F.3d 1356, 1360-611 (D.C. Cir. 2007).

the enhanced collection remedies the NDAA has provided *vis-a-vis* Iran's agencies or instrumentalities.

  2.  The judicial administration process a defendant who has not been properly served is treated as never having been a party for Rule 54(b) purposes.  Notwithstanding the line of authority, the Court out of an abundance of discretionary determination also weighs decisively in Plaintiffs' favor.  Thus, the relevant inquiry is whether it was proper for the District Judge here to consider such factors as whether the claims under review were separate from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.  *Curtiss-Wright*, 446 U.S. at 8.  The adjudication for claims are entirely separate from the claims against Defendant Iran.  The Unserved Defendants take declaratory judgment claims as to their §1610(g) status, which are severable and entirely different from the confirmation of the Default Judgment in the Underlying Action as a §1605A judgment.  The Unserved Defendants also face claims which are different in their factual underpinnings from the factual underpinnings that underlie the determination that IRGC is an "agency or instrumentality" of Iran.  Each Unserved Defendant presents its own factual circumstance, as to whether it is an "agency or instrumentality."  What is factually true for IRGC is entirely separate circumstantially than what serves to qualify the Unserved Defendants for "agency or instrumentality" status.  Because of this dissimilarity of facts, the D.C. Circuit would not be faced with deciding the same issues more than once if there were to be subsequent appeals by the Unserved Parties following adjudication of the Plaintiffs' claims against them.

For these reasons, there is no just reason to delay.  The court therefore certifies the judgment against Defendants Iran and IRGC as final under Rule 54(b) for all purposes, including appeal and enforce them thereof.


Dated:  February 24, 2010                         Respectfully submitted,


                                                  /s/ Paul L. Knight
                                                  Paul L. Knight (DC Bar No. 911594)
                                                  Nossaman LLP
                                                  1666 K Street, N.W., Suite 500
                                                  Washington, D.C.  20006-2803
                                                  Telephone:  (202) 887-1400
                                                  Facsimile:  (202) 466-3215

                                                  Philip Friedman
                                                  Friedman Law Offices, PLLC
                                                  2401 Pennsylvania Ave., N.W., Suite 410
                                                  Washington, DC 20037
                                                  Telephone: (202) 293-4175
                                                  Facsimile: (202) 318-0395

                                                  *Attorneys for Plaintiffs*