UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELISA NILI CIRILO PERES BEN-RAFAEL, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 08-0716 (ESH) |
| ISLAMIC REPUBLIC OF IRAN, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This Court previously issued a default judgment in favor of the estate of a victim of terrorism, David Ben-Rafael, and his immediate family members, in their lawsuit against the Islamic Republic of Iran ("Iran") and the Ministry of Information and Security of Iran ("MOIS"). *See Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39 (D.D.C. 2008) ("*Ben-Rafael I*"). Jurisdiction for that case was based on the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602-11. FSIA's immunity exception for state sponsors of terrorism, *see id.* § 1605(a)(1), which governed both the Court's jurisdiction and plaintiffs' avenues for enforcement of the judgment, was subsequently replaced by language more favorable to plaintiffs. *See* Pub.L. No. 110-181, § 1083, 122 Stat. 3, 338-44 (2008). Plaintiffs filed this related action to take advantage of the new statutory provisions. Plaintiffs seek, *inter alia*, (1) an order confirming the default judgment for money damages originally issued in *Ben-Rafael I* and (2) declaratory relief classifying the IRGC as an "agency or instrumentality" of Iran so that it will be subject to certain

1

recently-enacted FSIA remedies for execution of judgments under 28 U.S.C. § 1610(g).[1]
(Compl. at 4.)

After defendants Islamic Revolutionary Guard Corps ("IRGC") and Iran were served, neither entered an appearance or filed a response within sixty days. (Pls.' Aff. of Default ¶¶ 2-4.) The Clerk of the Court entered default, and plaintiffs now move for default judgment against these two defendants. (Mot. for J. by Default and Entry of Final J. ["Pls.' Mot."] ¶¶ 1, 3.) For the reasons stated herein, the Court grants in part and denies in part plaintiffs' motion.

## BACKGROUND

This case is based on the same facts set forth in *Ben-Rafael I*. 540 F. Supp. 2d at 43-51. Because the factual basis for the complaint has not changed since *Ben-Rafael I*, this Court incorporates by reference the findings of fact set forth therein and merely provides an abbreviated summary for the convenience of the reader. David Ben-Rafael died in the 1992 terrorist bombing of the Israeli embassy in Buenos Aires, Argentina, for which Hezbollah accepted responsibility. *Id.* at 43. Iran "played a pre-eminent role in the creation of Hezbollah," *id.* at 44 (internal quotation marks omitted), has funded Hezbollah since the mid-1980s, *id.*, and "provided material support to Hezbollah in its attack," thereby "allow[ing] Hezbollah to carry out the embassy bombing." *Id.* at 47.

---

[1] In addition to the claims against Iran and the IRGC addressed herein, plaintiffs list seven other defendants in their complaint. Plaintiffs seek money damages from the Ministry of Information and Security of Iran. (Compl. at 15-17.) They also request declaratory relief against the National Iranian Oil Company, the Alavi Foundation, Bank Saderat, Bank Melli Iran, Bank Sepah Iran, and the Ministry of Defense and Support of the Islamic Republic of Iran, declaring each of those entities to be an "agency or instrumentality" of Iran. (Compl. at 17-19.) Plaintiffs dismissed their claims against the Alavi Foundation. (Pls.' Praecipe of Dismissal.) However, because plaintiffs have not shown that service has been effectuated on the remaining defendants, this Memorandum Opinion only addresses the claims against Iran and IRGC, both of which have been properly served.

In 2006, fourteen years after David Ben-Rafael was killed in the embassy bombing, several family members and his estate brought suit against Iran and MOIS pursuant to the state-sponsor-of-terrorism exception to sovereign immunity. *See* 28 U.S.C. § 1605(a)(7). A default judgment was entered for plaintiffs on February 25, 2008. 540 F. Supp. 2d at 43.

Less than one month before this Court entered default judgment in *Ben-Rafael I*, then-President Bush signed into law the National Defense Appropriations Act for Fiscal Year 2008 ("2008 NDAA"), of which § 1083 replaces FSIA's original state-sponsor-of-terrorism exception.[2] *See* Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-44 (2008) (repealing 28 U.S.C. § 1605(a)(7) and enacting 28 U.S.C. § 1605A). In addition to preserving the exception to sovereign immunity, the statute as amended by the 2008 NDAA creates an express private right of action against state sponsors of terrorism, 28 U.S.C. § 1605A(c); allows for awards of punitive damages, *id.*; and, most pertinent to the instant motion, attempts to ease the difficulty of collecting FSIA judgments by entitling plaintiffs to impose liens on property belonging to state sponsors of terrorism. *Id.* § 1605A(g).[3] In addition, the 2008 NDAA enacted 28 U.S.C. § 1610(g), which allows for the attachment of property "in aid of execution" of FSIA judgments. *See* Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-44 (2008). In particular, under the 2008 NDAA, property subject to attachment includes that owned by "a foreign state against which a

---

[2]Although by the time this Court issued its default judgment in *Ben-Rafael I* the jurisdictional grant of 28 U.S.C. § 1605(a)(7) had been replaced, the Court nonetheless "retain[ed] jurisdiction pursuant to § 1605(a)(7) over cases that were pending under that section when Congress enacted the [2008] NDAA." *Simon v. Republic of Iraq*, 529 F.3d 1187, 1192 (D.C. Cir. 2008), *rev'ed on other grounds sub nom. Republic of Iraq v. Beaty*, 129 S.Ct. 2183 (2009).

[3]For a more comprehensive discussion of the genesis and effects of § 1605A, see generally *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 58-62 (D.D.C. 2009) (Lamberth, J.).

3

judgment is entered under section 1605A" or "an agency or instrumentality of such a state." 28 U.S.C. § 1610(g)(1).

Because the now-repealed § 1605(a)(7) set the parameters of the Court's jurisdiction in *Ben-Rafael I*, plaintiffs have been unable to take advantage of new attachment provisions of §§ 1605A and 1608(g).[4]  Hoping to avail themselves of these statutory provisions, plaintiffs now seek (1) to have default judgment reissued as to defendant Iran[5] using the new jurisdictional grant in § 1605A, and (2) for the Court to declare a new defendant, IRGC, subject to the attachment provisions of §§ 1605A(g) and 1608(g) as "an agency or instrumentality" of Iran.

## ANALYSIS

I. **Jurisdiction Under the FSIA**

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611, is the sole basis for obtaining jurisdiction over a foreign state in United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  Although it provides that foreign states are generally immune from jurisdiction in U.S. courts, *see* 28 U.S.C. § 1604, a federal district court can obtain personal and subject matter jurisdiction over a foreign entity in certain circumstances.  First, a court can obtain personal jurisdiction over a defendant if the plaintiff properly serves the defendant in accordance with 28 U.S.C. § 1608. *See* 28 U.S.C. § 1330(b).  Second, subject

---

[4]The 2008 NDAA did not provide for the new sections to apply retroactively in most cases. *See* Pub. L. No. 110-181, § 1083(c)(2), 122 Stat. 3, 343 (2008).  Instead, it allows plaintiffs to file new, related actions to take advantage of the new provisions, *see id.* § 1083(c)(3), as plaintiffs did here. *See also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 64-65.

[5]The Court's judgment in *Ben-Rafael I* was against both defendants in that case – Iran and MOIS. *See* 540 F. Supp. 2d at 43.  In this related action, plaintiffs have not served MOIS (*see* Pls.' Aff. of Default ¶ 2), so this Memorandum Opinion does not address MOIS.

matter jurisdiction exists if the defendant's conduct falls within one of the specific statutory exceptions to immunity. *See* 28 U.S.C. §§ 1605-07 (enumerating exceptions), 1330(a). This Court has jurisdiction because service was proper and defendants' conduct falls within the "state sponsor of terrorism" exception set forth in § 1605A.

### A. Service

In *Ben-Rafael I*, the Court explained FSIA's requirements for service of process upon a foreign state or a political subdivision of a foreign state under Fed. R. Civ. P. 4(j)(1) and 28 U.S.C. §1608. 540 F. Supp. 2d at 52. In this case, on September 8, 2009, plaintiffs effected service on Iran and IRGC in accordance with 28 U.S.C. § 1608(a)(4). (Pls.' Aff. of Default ¶¶ 4-5.)

### B. Terrorism Exception to Sovereign Immunity

The "state sponsor of terrorism" exception in the FSIA strips a foreign state of its sovereign immunity where:

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Thus, defendants' material support for the embassy bombing that killed Ben-Rafael constituted a waiver of sovereign immunity. *See Ben-Rafael I*, 540 F. Supp. 2d at 53-54.

### C. As a Related Action

In the alternative, this Court has jurisdiction to hear the case as a related action to *Ben-Rafael I*. As part of the enactment of § 1605A, Congress anticipated that plaintiffs with ongoing

FSIA suits would want to benefit from the newly-enacted provisions and that courts hearing pending suits under § 1605(a)(7) would need jurisdiction to hear related cases after that section's rescission. The 2008 NDAA therefore included a section that grandfathers "related action[s] to timely commenced prior actions under § 1605(a)(7)" into § 1605A's jurisdictional grant. 2008 NDAA § 1083(c)(3). To qualify, the new action must "aris[e] out of the same act or incident" and "commence[] not later than the latter of 60 days after– (A) the date of the entry of judgment in the original action; or (B) the date of the enactment of this Act [Jan. 28, 2008]." *Id.*

For the present case, the latter of the two relevant dates is February 25, 2008, the entry of default judgment in *Ben-Rafael I*. Plaintiffs commenced this related action exactly sixty days later, on April 25, 2008,[6] and because the new complaint arises from the same incident, the Court has jurisdiction over it.

## II. Confirming Default Judgment Against Iran

Plaintiffs now apply to the Court for default judgment against Iran. (Pls.' Mot. ¶¶ 1, 3. *See* Fed. R. Civ. P. 55(b)(2).) Specifically, they seek "to have the Default Judgment entered in [*Ben-Rafael I*] confirmed, declared, and entered as a judgment pursuant to the jurisdictional grant in 28 U.S.C. § 1605A." (Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 1-2.) Based on its findings of fact and conclusions of law from *Ben-Rafael I*, the Court will enter judgment against the defaulting defendant Iran.

After plaintiffs effected service through diplomatic channels, Iran had sixty days in

---

[6]Plaintiffs assert that they commenced the instant action on the sixteenth day after the Court's February 25, 2008 entry of judgment on the original action. (Plaintiffs' Proposed Findings of Fact and Conclusions of Law at 5.) According to both the docket and complaint, plaintiffs filed the complaint on April 25, 2008, the sixtieth day after entry of judgment on the original action. (*See* Compl. at 19.) At any rate, plaintiffs commenced the case within the sixty-day statutory window for § 1083(c)(3) to apply.

which to "serve an answer or other responsive pleading to the complaint." 28 U.S.C. § 1608(d). The sixty days passed without defendants entering any appearance in the case. (Pls.' Aff. of Default ¶ 5.) Accordingly, and in keeping with Fed. R. Civ. P. 55(a), the Clerk of the Court entered default against defendants on February 23, 2010.

Before entering default judgment, the Court must inquire further to determine if plaintiffs have established their claims "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). In evaluating plaintiffs' claims, the Court "may accept [their] uncontroverted evidence as true and may rely on sworn affidavits." *Oveissi v. Islamic Republic of Iran*, 498 F. Supp. 2d 268, 272 (D.D.C. 2007). The Court is not required to hold an evidentiary hearing. *See, e.g.*, *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 78 (D.D.C. 2006). As another source of information, the Court "may take judicial notice of related proceedings and records in cases before the same court." *Oveissi*, 498 F. Supp. 2d at 272 (internal citations omitted). After all, "courts have an interest [in] promoting uniformity of determinations with respect to the liability of foreign states for the terrorist acts of its officials, agents, and employees." *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009) (internal quotation marks omitted).

Based on prior rulings in *Ben-Rafael I*, 540 F. Supp. 2d at 43-51, the Court reaffirms its ruling that plaintiffs here established their claims "by evidence satisfactory to the court" and reenters default judgment as to defendant Iran.

### III. Declaration on the Status of IRGC

Plaintiffs also apply for default judgment against IRGC with regard to their request for declaratory relief. (Pls.' Mot. ¶ 3; *see* Fed. R. Civ. P. 55(b)(2).) Although plaintiffs have demonstrated IRGC's default, they have not met their burden of showing that IRGC is "an

7

agency or instrumentality" of Iran within the meaning of 28 U.S.C. § 1603(b).

Plaintiffs' attempts at service on IRGC were identical to those on Iran (*see supra* Part I.A), and, like defendant Iran, the IRGC has not entered any appearance or filed any pleading since service was effected through diplomatic channels. (Pls.' Aff. of Default ¶¶ 3-5.) The Clerk of the Court therefore properly entered default against IRGC on February 23, 2010.

Yet, the Court cannot agree with plaintiffs that IRGC falls squarely within the FSIA's understanding of the term "agency or instrumentality of a foreign state." *See* 28 U.S.C. § 1603(b). The statute defines the term as:

> any entity--
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title nor created under the laws of any third country.

*Id.* The D.C. Circuit has adopted a categorical approach to defining such an entity, wherein a party is either part and parcel of the foreign state itself or is an "agency or instrumentality" of that state, for purposes of the FSIA. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003). This Court is required to apply this approach.

In terms of the first element, status as a "separate legal person" under the Circuit's categorical approach requires the Court to consider only whether the core function of IRGC is predominantly governmental or predominantly commercial: "[I]f the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency

or instrumentality of the foreign state."⁷ *Id.* "The plaintiff bears the burden of proving that the entity is commercial," *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 199 (D.D.C. 2008), and that burden is further clarified as "by evidence satisfactory to the court." 28 U.S.C. § 1608(e).

Plaintiffs have not sustained their burden of showing the commercial nature of IRGC. They rely solely on the award of punitive damages against IRGC in *Bayani v. Islamic Republic of Iran*, 530 F. Supp. 2d 40, 46 (D.D.C. 2007) (Kennedy, J.), where it can be inferred that

---

⁷Since the Court of Appeals last visited its construction of "agency or instrumentality," the judicial and statutory landscape has changed. Most pertinently, the 2008 NDAA uses "agency or instrumentality" in new contexts that do not seem related to commerce. *See* 28 U.S.C. § 1605A (enforcement of court judgments); 2008 NDAA § 1083(d)(1) (sovereign immunity of Iraqi institutions). A debate has since emerged as to the breadth of the term. Recently, the broadest construction offered, as "any thing or person through which an action is accomplished," *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 83 (2d Cir. 2008), was reigned in by the Supreme Court, which held that the term cannot be defined to include natural persons. *Samantar v. Yousuf*, No. 08-1555, 2010 WL 2160785, at *7-8 (U.S. June 1, 2010). But the Court only rejected the breadth of "any thing or person" in the Second Circuit's definition, taking no position on the "through which action is accomplished" component that avoids a core function analysis. *See id.*

At the time of its adoption in the D.C. Circuit in *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994), the commercial function test bore relevance to FSIA litigation. From *Transaero* until the 2008 NDAA, disputes over whether parties counted as "agenc[ies] or instrumentalit[ies]" tended to involve either aspects of the FSIA that explicitly regard commercial issues, *see, e.g.*, *Nemariam v. Fed. Democratic Republic of Ethiopia*, 491 F.3d 470 (D.C. Cir. 2007) ("commercial activity" exception in FSIA), or the procedural requirements of the FSIA. *See, e.g.*, *Transaero*, 30 F.3d at 150 (service of process requirements); *Roeder*, 333 F.3d at 234 (determining private right of action). But the 2008 NDAA changed FSIA litigation by expanding both U.S. courts' jurisdiction and plaintiffs' remedial toolkits. Continuing to define agencies and instrumentalities with a restrictive core commercial function test is in tension with the goals of the new FSIA.

While this Court will apply the core commercial function test out of deference for precedent set by the Circuit Court of Appeals, it notes that the Court of Appeals' definition fits awkwardly with this application of the term "agency or instrumentality," because the core function of the entity has little impact on the amenability of its property to attachment in the execution of court judgments.

punitive damages could only have been awarded against an agency or instrumentality.[8] (*See*
Pls.' Prop. FF & CL at 7.) However, all of the cases that have actually discussed the issue have
found the IRGC to be part of the Iranian government, not an agency or instrumentality thereof.
*See Rimkus*, 575 F. Supp. 2d at 199; *Prevatt v. Islamic Republic of Iran*, 421 F. Supp. 2d 152,
158 (D.D.C. 2006) (Lamberth, J.); *Holland v. Islamic Republic of Iran*, 496 F. Supp. 2d 1, 32
(D.D.C. 2005) (Kollar-Kotelly, J.); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 117
(D.D.C. 2005) (Bates, J.). Plaintiffs seek to distinguish these cases by calling them "no longer
good law as they were rendered before the NDAA took effect" (Pls.' Prop. FF & CL at 7), but in
fact, *Bayani* meets that description, while the more recent *Rimkus* was decided eight months after
the enactment of the 2008 NDAA.

Given the persuasive analyses set forth in the above cases, this Court agrees that under
the core commercial function test the IRGC is not a "separate legal person," but is a
governmental entity, and thus the Court need not reach the second or third elements of the
"agency or instrumentality" analysis.

### III. Finality of Judgment

Plaintiff requests that the Court certify its default judgment today as final by using its
power to "direct entry of final judgment as to one or more, but fewer than all, claims or parties . .
. ." Fed. R. Civ. P. 54(b). That power and its constraints aim to "mediate[] between the

---

[8]While *Bayani* did award punitive damages against the IRGC, where punitive damages
were limited by statute to agencies or instrumentalities, the court did not expressly consider the
issue of whether the IRGC was an agency or instrumentality. *See* 530 F. Supp. 2d at 46. Other
cases in this jurisdiction have addressed carefully the relevant facts and have concluded that
IRGC is not a commercial entity. *See, e.g.*, *Rimkus*, 575 F. Supp. 2d at 199 ("[T]he IRGC is
governmental rather than a commercial entity" and therefore is not an agency or instrumentality
under the FSIA.)

10

sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice."
*Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 760 (D.C. Cir. 1997). Only "exceptional cases" merit Rule 54(b)'s direct entry, and the district court has discretion in identifying such cases because of its "familiar[ity] with the case and with any justifiable reasons for delay." *Bldg. Indus. Ass'n of Superior Calif. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 427 (1956)).

Before certifying a judgment as final pursuant to Rule 54(b), the district court must make certain express determinations on the record, without which a federal court of appeals does not acquire jurisdiction. *Johnson v. Mukasey*, 248 F.R.D. 347, 354 (D.D.C. 2008) (citing *Bldg. Indus. Ass'n*, 161 F.3d at 743). First, the order in question must be a final judgment, as in "an ultimate disposition of an individual claim entered in the course of a multiple claims action" and "a 'judgment' in the sense that it determines a claim for relief." *Bldg. Indus. Ass'n*, 161 F.3d at 744 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)). Second, the court must determine that there is no just reason for delay, "tak[ing] into account judicial administrative interests" including "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8).

The only judgment at issue is the reassertion of default judgment as against Iran, since that is the only judgment entered by the Court today. There is plainly no reason for delay in directing the entry of final judgment. This conclusion, made at the Court's discretion, is supported by the fact that the identical judgment was issued in the past and was itself a final judgment. Completely distinct from the default judgment against Iran for money damages, the

11

other claims in this action are against different defendants, request different forms of relief, and draw from different legal and factual issues. Namely, the other claims all focus on the nature of the other defendants and their classification as agencies or instrumentalities, rather on the embassy bombing itself, because the other claims only seek declaratory relief as to each defendant's status.

The Court has also weighed the effects on judicial administration and is confident that this entry of final judgment will not frustrate appellate efficiency or jurisdiction. The factual and legal bases for the underlying judgment for money damages are unrelated to the above status questions that must be decided for the claims that will remain outstanding after this judgment, so the same issues will not be duplicated on appeal even if there are subsequent appeals.

## CONCLUSION

For the foregoing reasons, the Court enters judgment for plaintiffs in the amounts specified in *Ben-Rafael I*, 540 F. Supp. 2d at 59, and directs entry of that judgment as final pursuant to Fed. R. Civ. P. 54(b). A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Dated: June 18, 2010